[Cite as *State v. Palmer*, 2022-Ohio-2339.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JEFFREY PALMER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0052**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2018 CR 660

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor, and *Atty. Ralph M. Rivera*, Assistant Chief Prosecuting Attorney, Criminal Division, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee

Jeffrey Palmer, *Pro se,* #764663, North Central Correctional Complex, P. O. Box 1812, Marion, Ohio 43302, Defendant-Appellant.

Dated:  June 28, 2022

_____

**WAITE, J.**

**{¶1}**   Appellant, Jeffrey Palmer, appeals the decision of the Mahoning County Court of Common Pleas to overrule the motion to vacate or set aside his judgment of conviction or sentence. Based on the following, the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

**{¶2}**   T.B. lived in Boardman, Ohio along with her three children.  In May of 2015, T.B. met Appellant through an online dating site where he went by the name "Israel." Appellant moved into T.B.'s apartment sometime in June or July of 2015 and lived there until May or June of 2016.

**{¶3}**   T.B.'s child, A.B., was ten years old when Appellant moved into the apartment.  T.B. was employed as a home health aide.  Appellant was unemployed.  At trial in this matter, T.B. stated that she worked two hours in the morning from 8:00 to 10:00 a.m. and two hours in the evening, from around 8:00 to 10:00 p.m.  She explained that while she only worked two hours at a time, she was away from home longer than that because she used public transportation to get to and from work.  She worked seven days a week and was off every other weekend.  While T.B. was at work and when she ran errands, Appellant was home alone with her children.  T.B. noticed that A.B.'s behavior began to change after Appellant moved in.  She became quiet and kept to herself.  T.B. questioned A.B. about her change in behavior but A.B. denied that there was a problem. T.B. testified that her sexual relationship with Appellant was not typical.  Eventually, the

<u>Case No. 21 MA 0052</u>

relationship ended and Appellant moved out. Subsequently, Appellant asked T.B. to move with her children into his house in Cleveland, but she refused.

{¶4}    In April of 2018, A.B. told her mother that Appellant had been sexually abusing her the entire time he lived in their apartment. T.B. took the child to the emergency room to be examined. A.B. told her mother that Appellant had different types of sex with her multiple times a day, every day. She said the abuse occurred while T.B. was at work. At trial, A.B. testified that at night, while getting ready to shower or getting her clothes out for the next day, Appellant would comment on her clothing and compliment A.B. on her appearance. A.B. testified that she stopped wearing nightgowns and wore pajamas because Appellant's comments made her feel uncomfortable. A.B. testified that the abuse almost always occurred in her mother's room because it was the only room with a lock on the door, however, Appellant abused her multiple times in other rooms while her mother and the younger children were sleeping. Appellant offered to buy her toys and snacks as the abuse continued but threatened A.B. not to tell her mother. A.B. said she never told anyone about the abuse while Appellant was living in the apartment. She testified that the abuse lasted for about one year until Appellant moved out. After Appellant moved to Cleveland, he continued to contact A.B. and talked about having her family move in with him. She finally told her mother after she had a nightmare about her mother leaving her.

{¶5}    In Appellant's direct appeal we summarized the testimony offered at trial as follows:

> The testimony of A.B. and her mother provided additional details of the sexual acts. A.B. testified that when she was ten years old, appellant came to live with them, and he watched her and her siblings while her mother

worked. (Tr. at 175). She testified that the first time that appellant touched her, she was on the couch in the living room on her tablet when he started asking her about the birds and the bees. (Tr. at 179). She stated he told her to get up and go to her mom's room, he shut the door, laid her down on the bed, and touched her vaginal area. (Tr. at 180).

She testified that appellant's conduct then escalated each time, such as taking out his penis and rubbing it against her "private part." (Tr. at 81). She testified that they went into her mother's room because it was the only door that locked. While initially she stated that appellant did not put his penis or his fingers inside her vagina, she testified that it hurt when appellant touched her "private part." (Tr. at 183-185). She later testified that it would hurt when appellant kept forcing his penis inside of her vagina and he did this at least ten times. (Tr. at 190-193). She also testified that sometimes when he rubbed his fingers on her "privates," it would hurt and this happened more than five times. (Tr. at 193). She stated that appellant put his mouth on her "private area" more times than she could count, but then narrowed it to more than 10 times but less than 15 times. (Tr. at 191-192). She also provided detail about times when the acts would occur, such as once when she came inside to get a glass of water while her siblings were outside and appellant called her into her mother's room, pulled her pants down, bent her over the bed, and put his penis "between her legs." (Tr. at 185). She further testified that sexual acts would occur twice a week and sometimes more than once per day. (Tr. at 191). A.B. also related that appellant would rub Vaseline on

his penis and told her that if he could continue with her, he would never touch her mom again. (Tr. at 189).

*State v. Palmer,* 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-4639, ¶ 21-22.

{¶6} Appellant was indicted by direct presentment to the Mahoning County Grand Jury on twelve counts of rape of a minor under the age of thirteen and one count of gross sexual imposition of a minor under the age of thirteen. A jury trial began on September 3, 2019. Along with the testimony of A.B. and her mother, the State's witnesses included a neighbor, Boardman Township police officers, a social worker employed by Akron Children's Hospital, a nurse practitioner at Akron Children's Hospital in the Child Advocacy Center, and a second social worker from the Child Advocacy Center who had interviewed A.B. Appellant was the only witness to testify for the defense.

{¶7} At the conclusion of the trial, the jury returned guilty verdicts on all counts. Appellant was sentenced to 10 years to life in prison on each of the twelve rape convictions and 5 years on the gross sexual imposition conviction. The court ran Counts 1, 2 and 3 for rape concurrently with each other; Counts 4, 5 and 6 for rape concurrently with each other but consecutively to Counts 1, 2, and 3; Counts 7, 8 and 9 for rape concurrently with each other but consecutively to Counts 1, 2 and 3, and Counts 4, 5, and 6; Counts 10, 11 and 12 for rape concurrently with each other; but consecutively to Counts 1, 2, and 3, 4, 5 and 6, and 7, 8, and 9; and Count 13 for gross sexual imposition concurrently with all sentences. In total, Appellant was sentenced to 40 years to life in prison.

{¶8} Appellant appealed his convictions and sentence. *Id.* He challenged the sufficiency of the indictment, the jury instructions, sufficiency of the evidence, and raised

Case No. 21 MA 0052

evidentiary errors. Appellant also claimed to have received ineffective assistance of counsel, and alleged that there was cumulative error in reaching his guilty verdict. On September 29, 2021, we affirmed the judgment of the trial court. While his direct appeal was pending, Appellant filed a motion to vacate or set aside the judgment of conviction or sentence on February 1, 2021. On March 11, 2021, the state filed a motion for judgment on the pleadings and on April 23, 2021, Appellant filed a reply. On May 4, 2021, the trial court issued a judgment entry, without a hearing, overruling Appellant's motion and granting the state's motion for judgment on the pleadings.

{¶9} In this appeal of the denial of his motion for postconviction relief, Appellant advances eight assignments of error. Assignments one through seven allege ineffective assistance of counsel. Assignment of error number eight argues cumulative error.

<u>ASSIGNMENT OF ERROR NO. 1</u>

Appellant was denied due process and the effective assistance of counsel, a violation of the 5, 6, and 14th Amendment to the U.S. Constitution; Section 16 Article 1 of the Ohio Constitution, when trial counsel misleads Appellant into unknowingly and involuntarily waived his speedy trial right.

<u>ASSIGNMENT OF ERROR NO. 2</u>

Appellant was denied effective assistance of counsel, a violation of due process of the 6th and 14th Amendment to the United States const. and Section 16, Article 1 of the Ohio Const., when trial counsel failed to conduct a reasonable investigation to determine possible defenses.

Case No. 21 MA 0052

## ASSIGNMENT OF ERROR NO. 3

Trial counsel was constitutionally ineffective for failing to present expert testimony to rebut the prosecution's case and expert testimony, and failing to provide expert testimony regarding Petitioner's erectile dysfunction and medication side effects, violating his 6th and 14th Amendments of due process.

## ASSIGNMENT OF ERROR NO. 4

Petitioner was denied due process and the effective assistance of counsel when his trial attorney failed to raise a timely carbon copy objection on the 12 rape counts pursuant to Crim.R.12(C) in violation of his 6th and 14th Amendment, Section 16, 10, art 1.

## ASSIGNMENT OF ERROR NO. 5

Petitioner was denied effective assistance of counsel, a violation of due process of the 6th and 14th amendment of the U.S. Constitution and section 10 and 16 of the Ohio Constitution, when counsel failed to use information in discovery to make a defense and assist him in preparing the case before trial.

## ASSIGNMENT OF ERROR NO. 6

Petitioner was denied effective assistance of counsel, a violation of due process of the 6th and 14th amendments to the U.S. Constitution and Section 16 Art. 1 of the Ohio Constitution, when trial counsel failed to argue and make

a record that the state had exercised its peremptory strikes in a racially discriminatory manner.

## ASSIGNMENT OF ERROR NO. 7

Appellant was denied due process and the effective assistance of counsel, a violation of the 6th and 14th Amendment to the U.S. Constitution and Section 16 Article 1 of the Ohio Constitution, when counsel failed to convey the state's plea offer to Appellant.

## ASSIGNMENT OF ERROR NO. 8

Appellant was denied a fair trial because of cumulative errors.

{¶10} Postconviction relief allows a petitioner to collaterally attack a criminal conviction by filing a petition to set aside the judgment where the petitioner's constitutional rights were denied to such an extent the conviction is void or voidable under the Ohio or United States Constitutions. R.C. 2953.21(A); *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967); paragraph four of the syllabus. A common pleas court may grant relief from a conviction pursuant to R.C. 2953.21 et seq., the postconviction statutes, where petitioner proves that he suffered a violation of his constitutional rights during the proceedings resulting in the conviction. See R.C. 2953.21(A)(1).

{¶11} The petitioner has the initial burden to demonstrate in the petition, supporting affidavits, and the files and records of the case, that there are "substantive grounds for relief." R.C. 2953.21(C). Substantive grounds for relief exist if the petition presents a prima facie claim there was a constitutional violation. The petition must contain factual allegations

that cannot be determined by an examination of the trial record. *State v. Milanovich,* 42 Ohio St.2d 46, 50, 325 N.E.2d 540 (1975).

{¶12} In resolving a postconviction petition, a trial court may exercise one of three options:

> The first is to deny the petition without hearing, in accordance with the law as set forth in R.C. 2953.21 and the Ohio Supreme Court's decision in *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). The second is to act on the state's motion for summary judgment by applying the standards set forth in Civ.R. 56. The third is to schedule an evidentiary hearing on [the defendant's] petition, at which time the trial court, as the trier of fact, is authorized to weigh the evidence and enter judgment.

*State v. Paige,* 7th Dist. Mahoning No. 17 MA 0146, 2018-Ohio-2782, ¶ 16.

{¶13} Appellate courts review a trial court's ruling on a petition for postconviction relief for abuse of discretion. *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. Abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980); *see also Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Moreover, abuse of discretion describes a judgment that comports with neither the record nor with reason. *See, e.g., State v. Ferranto,* 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925).

{¶14} A postconviction petition may also be dismissed without hearing where the claims are barred by *res judicata. State v. West,* 7th Dist. Jefferson No. 07 JE 26, 2009-

Case No. 21 MA 0052

Ohio-3347, ¶ 24. *Res judicata* bars any claim or defense that was raised, or could have been raised, in an earlier proceeding:

> Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*Perry,* 10 Ohio St.2d at 180-181.

{¶15} A trial court may dismiss a petition for postconviction based on *res judicata* when the defendant, represented by new counsel in the direct appeal, fails to raise the issue of trial counsel's competence when the issue could have been determined without resort to evidence outside of the record. *State v. Carosiello,* 7th Dist. Columbiana No. 18 CO 0018, 2019-Ohio-2705, ¶ 28. The Twelfth District has stated:

> [E]vidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery. *[State v.] Coleman,* [1st Dist. No.] C-900811, [1993 WL 74756] at *7.*

*State v. Lawson,* 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (12th Dist.1995).

Case No. 21 MA 0052

{¶16} Appellant's postconviction petition was filed with the trial court while his direct appeal was pending in this Court. Appellant raises many of the same errors in his petition that were addressed in his direct appeal. For example, Appellant's fourth assignment of error regarding trial counsel's alleged failure to object to the multiple rape counts in the indictment was addressed on direct appeal where we concluded that the indictment was sufficient to support multiple charges. *Palmer,* ¶ 31.

{¶17} It is apparent Appellant's claims regarding ineffective assistance set forth in his fourth assignment of error are barred by *res judicata* and are overruled.

{¶18} Regarding the remaining assignments of error, Appellant presents no evidence outside of the record in support of these claims. Instead, Appellant refers to multiple parts of the trial transcript and other evidence already in the record to support his arguments. As Appellant relies on no evidence outside of the record and all of the remaining claims in his petition could and should have been raised and addressed in his direct appeal, these claims were properly dismissed on the basis of *res judicata*. *Carosiello,* ¶ 28.

{¶19} Appellant's petition appears to be merely a restatement and embellishment of the clams he argued on direct appeal. Not only does Appellant fail to provide any evidence in support of these claims dehors the record, the petition contains allegations that have no evidentiary or factual support at all. Appellant's claims amount to his speculation that a constitutional violation may have occurred and a desire for additional discovery, and are in no way based on any real evidence not contained in his record of trial. *Lawson,* 315.

{¶20} All of the errors alleged, whether in the multiple claims of ineffective assistance of counsel or in the cumulative error allegations, are based on information

Case No. 21 MA 0052

already in the existing record in this case.  These issues could and should have been raised by Appellant's new counsel in his direct appeal of this matter.  Therefore, all of Appellant's assignments of error are barred by *res judicata* and are overruled.  *Carosiello*, ¶ 28.  The trial court's denial of Appellant's postconviction relief petition without a hearing is hereby affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

[Cite as *State v. Palmer*, 2022-Ohio-2339.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**JUDGE CHERYL L. WAITE**

**JUDGE GENE DONOFRIO**

**JUDGE CAROL ANN ROBB**

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**